UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. 8:25-cv-00235-KES                                                   Date: June 11, 2025

Title: KRISTA ITZHAK, et al. v. KEURIG DR PEPPER, INC., et al.

---

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PETITIONER/PLAINTIFF: | ATTORNEYS PRESENT FOR RESPONDENTS/DEFENDANTS: |
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**   **ORDER GRANTING, in part, and DENYING, in part, Motion to Dismiss First Amended Complaint (Dkt. 25)**

### I. INTRODUCTION.

Plaintiffs Krista Itzhak, Sandy Kreutter, and Skip Solorzano ("Plaintiffs") filed a putative class action against Keurig Dr. Pepper, Inc. ("Defendant") raising claims under California's Song-Beverly Consumer Warranty Act ("SBA") and Unfair Competition Law ("UCL"). On May 2, 2025, Defendant moved to dismiss the operative First Amended Complaint ("FAC" at Dkt. 23). (Dkt. 25.) Plaintiffs opposed (Dkt. 26) and Defendant replied (Dkt. 27). The Court held a hearing on June 10, 2025. (Dkt. 28.) For the reasons stated herein, Defendant's motion is GRANTED in part and DENIED in part.

### II. SUMMARY OF THE FAC.

#### A. **Factual Allegations.**

Plaintiffs all reside in California. (Dkt. 23 ¶¶ 8-10.) "On November 23, 2023, Plaintiff Itzhak purchased Defendant's Keurig K-Mini Single Serve Coffee Maker, Oasis online from Amazon.com for $53.86 to be delivered to her home in Irvine, California." (Id. ¶ 14.) Itzhak's coffeemaker shipped on November 27, 2023, and was delivered "sometime after that date." (Id.) "On March 28, 2024, Plaintiff Kreutter purchased Defendant's Keurig K-Express Coffee Maker online from Amazon.com for $76.64 to be delivered to her home in Sherman Oaks, California." (Id. ¶ 15.) Kreutter's coffeemaker shipped on March 30, 2024, and was delivered "sometime

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES                                                                                         Date: June 11, 2025
                                                                                                                                      Page 2

after that date." (Id.) "On January 2, 2025, Plaintiff Solorzano purchased Defendant's Keurig K-Supreme Plus Special Edition Single Serve Coffee Maker online from Costco.com for $129.99 to be delivered to his home in Murietta, California." (Id. ¶ 16.) Solorzano's coffeemaker was delivered on January 4, 2025. (Id.)

All three coffeemakers came with an express written warranty that stated as follows:

Keurig Green Mountain, Inc. ("Keurig") warrants that your brewer will be free of defects in materials or workmanship under normal home use for one year from the date of *purchase*…Keurig will, at its option, repair or replace a defective brewer without charge upon receipt of proof of the date of *purchase*." (emphasis added).

(Id. ¶ 17.)

**B.     The SBA Claims.**

Effective July 1, 2023, the SBA prohibits a "manufacturer, distributor, or retail seller" from making "an express warranty with respect to a consumer good that commences earlier than the date of *delivery* of the good." Cal. Civ. Code § 1793.01 (emphasis added). Plaintiffs contend that Defendant violated this section of the SBA by running their coffee makers' one-year warranty from the date of purchase rather than the date of delivery. (Dkt. 23 at ¶¶ 41-42.) Plaintiffs allege that they were injured by this practice because online shoppers, like them, "are short-changed the full value of their warranties." (Id. ¶ 3.) "Specifically, their warranties have been cut short by the number of days that elapsed between the date of purchase and the date of delivery of their products. Thus, Plaintiffs … have lost a pro-rate portion of the value of their warranties." (Id. ¶ 45.) Plaintiffs "have not received the full value of the products that Plaintiffs are entitled to." (Id. ¶ 18.)

Plaintiffs seek actual damages (i.e., the amount they allegedly over-paid for the coffeemakers because of the short-changed warranty) and a civil penalty for willful violation of the SBA. (Id. ¶¶ 49-50.) They also seek to recover attorneys' fees and costs. (Id. ¶ 51.)

**C.     The UCL Claims.**

The UCL proscribes "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising …." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Defendant's practice of short-changing consumer warranties violates the "unfair" and "unlawful" prongs. (Dkt. 23 at ¶¶ 54-55.) Plaintiffs allege that Defendant's practice is unfair because the harm it causes to consumers outweighs its utility. (Id. ¶ 58.) Plaintiffs allege that Defendant's practice is unlawful because it violates the SBA. (Id. ¶ 60.) Plaintiffs seek the equitable remedies of injunctive relief, restitution, and disgorgement. (Id. ¶ 63.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES　　　　　　　　　　　　　　　　　　　　　Date: June 11, 2025
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

### D. The Class Allegations.

Plaintiffs seek to represent a class defined as "All persons within California who purchased one or more of Defendant's products between July 1, 2023, through the date of class certification, whose Product(s) were delivered to them after the date of purchase." (Id. ¶ 24.) Members of this class need neither to have purchased a product accompanied by an express warranty nor to have purchased products from Amazon.com or Costco.com.

Plaintiffs also seek to represent an express warranty subclass defined as "All persons within California who purchased one or more of Defendant's products between July 1, 2023, through the date of class certification, which were accompanied by an express warranty that commenced on the date of purchase and not the date of delivery." (Id. ¶ 25.)

### III. LEGAL STANDARD.

Defendant moves to dismiss under Rule 12(b)(1) for lack of Article III standing and Rule 12(b)(6) for failure to allege sufficient facts to state claim. (Dkt. 25-1 at 10.[1])

For purposes of Rule 12(b)(1), standing is a "jurisdictional" limitation deriving from the "case or controversy" requirement of Article III of the United States Constitution. Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir. 2000). To demonstrate Article III standing, a plaintiff must show (1) "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Plausibility requires "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### IV. DISCUSSION.

### A. The SBA Claims.

Defendant moves to dismiss Plaintiffs' SBA claims on the following two grounds: Plaintiffs failed to allege facts sufficient to show that (1) their coffeemaker purchases occurred in California, a prerequisite for applying the SBA; and (2) they have been "damaged" by Defendant's alleged violation of the SBA. (Dkt. 25-1 at 7.)

---

[1] Page citations refer to the pagination imposed by the Court's e-filing system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES                                                                Date: June 11, 2025
                                                                                                            Page 4

**1.      The Location of the Sales.**

        a.      Relevant Law.

The SBA defines a "sale" as "the passing of title from the seller to the buyer for a price, or a consignment for sale." Cal. Civ. Code § 1791(n). California law is clear that when the sale of a consumer good results in title passing outside of California, the SBA does not apply. See, e.g., Cal. Civ. Code §§ 1792 (every "sale of consumer goods that are sold at retail in this state" is accompanied by an implied warranty of merchantability), 1792.1 (specifying when the implied warranty of fitness applies to the "sale of consumer goods that are sold at retail in this state"); see also Galicia v. Country Coach, Inc., 324 F. App'x 687, 688 (9th Cir. 2009) (holding the SBA did not apply where "the parties entered into a destination contract under which the retailer would deliver the motorhome to the consumers in Arizona"); D.L. Edmonson Selective Serv. v. LCW Auto. Corp., 689 F. Supp. 2d 1226, 1236 (C.D. Cal. 2010) (holding the SBA did not apply where "title passed to the [vehicle's] lessor in Texas"); Cummins, Inc. v. Superior Court, 36 Cal. 4th 478, 491 (2005) (discussing "the limitation on the Act's coverage to goods sold in California").

The California Commercial Code provides that "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Cal. Com. Code § 2401(2). Section 2401(2) distinguishes a "shipment contract" from a "delivery contract." Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1113 (C.D. Cal. 2007) (holding motorhome was sold in California because of the purchase contract's terms). A shipment contract "authorizes the seller to send the goods to the buyer, but does not require him to deliver them at destination." Cal. Com. Code § 2401(2). In such cases, "title passes to the buyer at the time and place of shipment." Id. Shipment contracts are the presumptive form in California. See Cal. State Elecs. Ass'n v. Zeos Int'l, 41 Cal. App. 4th 1270, 1278 (1996) (citing Cal. Com. Code § 2503 ("[T]he 'shipment' contract is regarded as the normal one and the 'destination' contract as the variant type.")).

On the other hand, a delivery contract "requires delivery at destination." Cal. Com. Code § 2401(2). Because delivery is required at destination, "title passes on tender" at the specified delivery destination. Id.

A California Court of Appeal analyzed the differences between delivery contracts and shipment contracts in Zeos Int'l, 41 Cal. App. 4th 1270, 1276-77 (1996). The Zeos Int'l plaintiffs brought an action against defendant computer manufacturer to enforce compliance with California's warranty requirements under the SBA. Id. at 1272. Defendant won summary judgment because title to the goods passed outside California. Id. The appellate court affirmed. The court relied on two facts in support of its conclusion that title to the goods passed in Minnesota instead of California. Id. at 1277. First, the evidence showed that defendant's sales operation consisted of telephone orders that were shipped at plaintiffs' expense from Minnesota to plaintiffs' location. Second, paperwork prepared by defendant and sent to plaintiffs contained no provision requiring defendant to deliver the goods to plaintiffs outside Minnesota. These two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES    Date: June 11, 2025
                                                                                                 Page 5

undisputed facts "plainly mark[ed] Zeos's terms as 'shipment' contracts," the "presumptive form" in California. Id.

        b.        Analysis.

Defendant argues that Plaintiffs have not alleged sufficient facts about the contractual terms of their purchases (e.g., Was it a shipment contract? What were the terms and conditions? If it was a shipment contract, from where did the coffeemakers ship? Is there tracking information saved in each Plaintiff's account?) to demonstrate that the sales occurred in California. (Dkt. 25-1 at 17.) Defendant further argues that, consistent with Rule 11, Plaintiffs cannot allege that their Amazon.com purchases were delivery contracts, because Amazon.com's Conditions of Use, publicly available on the Amazon.com website, "make clear that its contracts with purchasers are shipment contracts." (Id. at 17 n.2.)

Plaintiffs argue that they have alleged that upon making their online purchases, they specified that the products should be delivered to their homes in California. (Dkt. 26 at 7-8, referring to Complaint ¶¶ 14-16.) Plaintiffs argue that these allegations are sufficient to demonstrate that they had a delivery contract with Amazon.com and Costco.com, such that title passed in California. (Id.)

Defendant responded by citing Frengel v. McLaren Auto., Inc., 644 F. Supp. 3d 738 (S.D. Cal. 2022). (Dkt. 27 at 15.) In Frengel, the plaintiff alleged that the vehicle was required to be delivered to his home in Laguna Beach and argued that this allegation was sufficient to allege that title passed in California, making the SBA applicable. Id. at 744. The district court, however, declined to accept the allegation as true because it was contradicted by the lease agreement, a document referenced extensively in the complaint. Id.

Ultimately, Plaintiffs' purchases from the online retailers are contracts. Plaintiffs have neither alleged any facts about the terms of those contracts nor attached them as exhibits. Without allegations about the terms of their contracts (e.g., the websites' terms of use and/or other terms applicable because they used a "prime" account, a business account, a special credit card, etc.), Plaintiffs have not alleged sufficient facts to show that they purchased the coffeemakers in California.

For this reason, Plaintiffs' SBA claims are DISMISSED with leave to amend.

       **2.**       **Damages.**

Under the SBA, only a "buyer of consumer goods who is *damaged* by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal or equitable relief." Cal. Civ. Code § 1794(a) (emphasis added).

Defendant argues, "Plaintiffs posit that they have not received the 'full value of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES                                                                                                                       Date: June 11, 2025
                                                                                                                                               Page 6

products' (FAC ¶¶ 18, 45) because of the Limited Warranty, but that legal conclusion is nothing more than a bare alleged technical violation of the SBA." (Dkt. 25-1 at 13.) Defendant argues that Plaintiffs have not alleged facts sufficient to show that they were damaged by the short-changed warranty, because Plaintiffs allege neither the existence of any defects in materials or workmanship affecting their coffeemakers nor that they ever requested or needed to request warranty services. (Dkt. 25-1 at 7.)

In Kalcheim v. Apple, Inc., No. 2:16-cv-09324-ODW-RAO, 2017 U.S. Dist. LEXIS 127332 (C.D. Cal. Aug. 10, 2017), a case decided before the California Legislature enacted the relevant section of the SBA, the district court considered whether a consumer who alleged a short-changed warranty had alleged facts sufficient to establish damages for purposes of Article III standing. In that case, Plaintiff Kalcheim purchased an Apple-brand computer and an extended three-year warranty called AppleCare. He alleged that the "AppleCare coverage period begins immediately upon purchase," but "the customer may need to wait 4-5 weeks or more to receive their electronic device." Id. at *2. He further alleged that this practice "shorts the customer's warranty—i.e., it deprives them of the full value of the warranty." Id. Apple moved to dismiss the complaint, arguing "that Plaintiff ha[d] not suffered an injury because he never had a repair denied, never paid for any repair, service or support, never refrained from making a service or support call to Apple because of a belief that their warranty was shorter than it should have been, and . . . [was] never denied support under AppleCare." Id. at *5.

The district court rejected Apple's argument, finding that "Apple's conduct, as alleged by Plaintiff, reduced the value of the warranty that Plaintiff purchased, which is sufficient to form the basis for standing." Id. at *8. The district court reasoned that even if the warranty was only shortened by a few days or weeks, "By shorting the warranty, the warranty shifts less risk from the consumer to Apple than if the warranty had not been shorted. This is enough to satisfy standing." Id., citing Donohue v. Apple, Inc., 871 F. Supp. 2d 913, 919 (N.D. Cal. 2012) ("Economic injury may result from unfair competition if a plaintiff … acquires in a transaction less[] than he or she otherwise would have ….").

Defendant argues that the unpublished California case of Branning v. Apple Inc., No. H036343, 2015 Cal. App. Unpub. LEXIS 576, 2015 WL 355426 (Cal. Ct. App. Jan. 28, 2015) is more persuasive. That case, however, is factually distinguishable. In Branning, consumer plaintiffs complained that Apple used an "estimated" purchase date to start warranty coverage, and "the estimated purchase dates were always earlier than the actual purchase dates and thus caused their warranty and AppleCare coverage to expire prematurely." Id. at *2. Evidence, however, showed that the estimated or "provisional" warranty start dates in Apple's internal systems "are replaced with 'validated' warranty start dates once Apple interacts with the customers who purchase those products." Id. at *1. Validation could occur in a variety of situations, including a customer requesting warranty services and presenting a receipt establishing the actual date of purchase. Id. Because Apple also recognized certain grace periods, the "practical result" of Apple's policies was "that a number of customers enjoy warranty periods that are in fact longer than one year from the actual dates on which they

Case 8:25-cv-00235-KES    Document 30    Filed 06/11/25    Page 7 of 9    Page ID #:155

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES                                          Date: June 11, 2025
                                                                    Page 7

purchased their products." Id. During discovery, each Branning consumer plaintiff "admitted that he or she never had a repair or service denied on any Apple product, never paid for any repair or service on any Apple product, and never refrained from seeking any repair or service on a belief that the warranty or AppleCare coverage on a product had expired." Id. at *2. Thus, they had never attempted to "validate" their warranty start date and could not demonstrate that they had received less than a one-year warranty.

The Court finds the facts in Kalcheim v. Apple, Inc. more like those alleged by Plaintiffs. Plaintiffs allege facts sufficient to show that their warranty period was, in fact, shortened by two days or more. It is intuitive that a one-year warranty is worth more than a six-month warranty, even if the buyer never makes a warranty claim. While the difference in value between a coffeemaker with a 365-day warranty versus a coffeemaker with a 363-day warranty may be very small, Plaintiff Solorzano has alleged facts sufficient to show that he suffered that economic injury. Similarly, the other two Plaintiffs allege that their coffeemakers arrived two or more days after the date of purchase. (Dkt. 23 ¶¶ 14-16.)

Of course, the factual contentions in a complaint must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. To satisfy this Rule, Plaintiff Solorzano, for example, would need at least some preliminary expert analysis establishing that the difference in value between a coffeemaker with a 365-day warranty versus a coffeemaker with a 363-day warranty is a quantifiable amount.

### B. The UCL Claims.

#### 1. Unlawful or Unfair Acts.

Defendant argues that if Plaintiffs have not pled sufficient facts to show a violation of the SBA, then they have not stated an "unlawful" claim under the UCL. (Dkt. 25-1 at 18.) The Court agrees and will dismiss Plaintiffs' "unlawful" UCL claims with leave to amend.

Defendant also argues that the only "unfair" act Plaintiffs allege was designing an unlawful warranty. (Dkt. 25-1 at 18, citing Dkt. 23 ¶ 57.) But regardless of whether the shortened warranty was unlawful under the SBA, Plaintiffs allege it is unfair because the harm it causes outweighs its utility. (Dkt. 23 ¶ 58.) This claim could be made even if the SBA does not apply. The Court, therefore, denies Defendant's motion to dismiss the "unfair" UCL claims.

#### 2. Statutory Standing.

Under the UCL, a plaintiff has standing only if he/she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To satisfy the UCL's standing requirements, a plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show

Case 8:25-cv-00235-KES     Document 30     Filed 06/11/25     Page 8 of 9     Page ID #:156

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES                                                                    Date: June 11, 2025
                                                                                                              Page 8

that economic injury was the result of, i.e., caused by, the unfair business practice … that is the gravamen of the claim." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011).

For the same reasons discussed above as to why Plaintiffs alleged facts sufficient to show they were damaged for purposes of their SBA claims, they have also alleged facts sufficient to show they suffered "injury in fact and … lost money" for purposes of their UCL claims.

### C.     Article III Standing.

#### 1.     Injury in Fact.

Having alleged facts sufficient to show they suffered damages and have statutory standing under the SBA and UCL, Plaintiffs have also alleged facts sufficient to show Article III standing arising out of their own coffeemaker purchases.

#### 2.     Class Allegations.

Defendant contends, "Plaintiffs also lack Article III standing to represent putative class members who purchased products other than the K-Mini, K-Express, or KSupreme products that Plaintiffs purchased." (Dkt. 25-1 at 15.)

"Courts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products." Figy v. Frito-Lay N. Am., Inc., 67 F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) (collecting cases). Under the first approach, the court dismisses all claims based upon unpurchased products. Id. Under the second "middle ground" approach, the court concludes that substantial similarity between purchased and unpurchased products is sufficient to satisfy Article III requirements as to claims based upon unpurchased products. Id. "In applying the 'substantial similarity' test, Courts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." Id. at 1083. Finally, under the third approach, the court concludes that as long as a plaintiff has Article III standing to sue for the products that he/she purchased, any questions regarding standing to sue for unpurchased products should be left for resolution at the class certification stage. Id. at 1082.

Defendant argues for the first approach. Most of the cases cited by Defendant involved false advertising claims. In those cases, district courts reasoned that if a plaintiff buys product X in reliance on false claims or material omissions about product X, then her injury in fact stems only from her purchase of product X, no matter how similar product Y may be and no matter if product Y is advertised similarly. See, e.g., Lorentzen v. Kroger Co., 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (holding that a false advertising plaintiff has standing to bring claims related to the product she purchased, but not other similar products she did not purchase, since she did not "injuriously rely" on the advertising for those other products); Oh v. Fresh Bellies, Inc., No. CV 24-5417 PSG -JPRX, 2024 U.S. Dist. LEXIS 189574, 2024 WL 4500727 (C.D. Cal. Oct. 15,

Case 8:25-cv-00235-KES     Document 30     Filed 06/11/25     Page 9 of 9     Page ID #:157

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:25-cv-00235-KES												Date: June 11, 2025
																	Page 9

2024) (holding Plaintiff Oh, who alleged deceptive slack fill, had standing to sue only over the flavor of freeze-dried fruit toddler snacks that she actually purchased); Ochoa v. Zeroo Gravity Games LLC, No. CV 22-5896-GW-ASX, 2023 WL 4291974, 2023 U.S. Dist. LEXIS 115336, at *25-26 (C.D. Cal. Feb. 1, 2023) ("A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely.").

Without deciding between the first and second approaches, even applying the second approach, Plaintiffs' allegations are insufficient. Under that approach, the relevant question is whether Plaintiffs have alleged facts sufficient to establish that all the unpurchased products caught up in their class definitions are so substantially similar to their coffeemakers as to satisfy Article III requirements. See Lozano v. Bowmar Nutrition LLC, No. 2:21-cv-04296-MCS-KS, 2021 U.S. Dist. LEXIS 191266, at *7 (C.D. Cal. Aug. 19, 2021) ("Even if Plaintiff has standing to predicate her claims on substantially similar unpurchased products, Plaintiff here pleads no facts indicating the unpurchased products are substantially similar to the eleven she did.").

Plaintiffs' proposed class definitions are so broad that they would include people who purchased products that (1) did not come with an express warranty (like used coffeemakers purchased from private sellers on eBay); and (2) are not coffeemakers at all (like K-cups, K-cup holders, mugs, or gift cards). Plaintiffs have not alleged facts sufficient to show that all such products are substantially similar or that the purchasers of all such products suffered an injury, let alone the same injury as the injury alleged by Plaintiffs (i.e., the lost economic value of a shortened warranty for a coffeemaker, a mechanical product that might break and need warrantied repairs). Plaintiffs, therefore, have failed to allege sufficient facts to show that they have standing to represent the class of all purchasers that they allege in the SAC. The Court DISMISSES Plaintiffs' overly broad class definitions with leave to amend.

## V.     DISPOSITION.

For these reasons, Plaintiffs' SBA claims, unlawful UCL claims, and class definitions are DISMISSED with leave to amend. Plaintiffs shall file their Second Amended Complaint ("SAC") **by July 1, 2025**. If Plaintiffs need to subpoena information from Amazon.com or Costco.com to include in the SAC, then they can meet and confer with counsel for Defendant to stipulate to a schedule for doing so and extend the deadline for filing an SAC.

Initials of Deputy Clerk jd